AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District of Massachusetts | |
|---|---|---|
| Name: Anthony Rolon | Prisoner No. W-62684 | Case No. SSC-07975 |
| Place of Confinement: MCI-Norfolk, 2 Clark Street, P.O. Box 43, Norfolk, MA 02056-0043 | | |

Name of Petitioner (include name under which convicted): Anthony Rolon

v.

Name of Respondent (authorized person having custody of petitioner): Luis Spencer, Superintendent MCI-Norfolk

The Attorney General of the State of: Massachusetts

## PETITION

1. Name and location of court which entered the judgment of conviction under attack Bristol Superior Court, 9 Court Street, Taunton, MA 02780

2. Date of judgment of conviction May 19, 1997

3. Length of sentence Life without parole

4. Nature of offense involved (all counts) First degree Murder; Assault & Battery with a dangerous weapon (2); Armed Assault in a dwelling; Home invasion; Burglary - Armed Assault on occupant.

5. What was your plea? (Check one)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☒
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court Supreme Judicial Court

(b) Result Denied

(c) Date of result and citation, if known March 13, 2003

(d) Grounds raised Citation: 784 N.E.2d 1092 (2003) Issues described in attached decision, Commonwealth v. Rolon

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court n/a

(2) Result n/a

(3) Date of result and citation, if known

(4) Grounds raised

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court n/a

(2) Result n/a

(3) Date of result and citation, if known

(4) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐ No ☒

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court

(2) Nature of proceeding

(3) Grounds raised

AO 241 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result ______

(6) Date of result ______

(b) As to any second petition, application or motion give the same information:

(1) Name of court ______

(2) Nature of proceeding ______

(3) Grounds raised ______

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result ______

(6) Date of result ______

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc. Yes ☐ No ☐
(2) Second petition, etc. Yes ☐ No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: (See attached GROUNDS FOR APPEAL)

Supporting FACTS (state *briefly* without citing cases or law)

B. Ground two: (See attached GROUNDS FOR APPEAL)

Supporting FACTS (state *briefly* without citing cases or law):

AO 241 (Rev. 5/85)

C. Ground three: (See attached GROUNDS FOR APPEAL)

Supporting FACTS (state *briefly* without citing cases or law):

D. Ground four

Supporting FACTS (state *briefly* without citing cases or law):

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: n/a

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing

(b) At arraignment and plea Paul Redmond, Esq., Boyce Farm Road, Lincoln, MA 01773

AO 241 (Rev. 5/85)

(c) At trial Robert George, Esq.
138 Newbury Street, Boston, MA 02116

(d) At sentencing (same as 15 (c)

(e) On appeal John Palmer, Esq., 24 School Street, 8th Floor, Boston, MA 02108

(f) In any post-conviction proceeding n/a

(g) On appeal from any adverse ruling in a post-conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒
(a) If so, give name and location of court which imposed sentence to be served in the future:
n/a

(b) Give date and length of the above sentence: n/a

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐ n/a

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

02/18/04
(date)

Signature of Petitioner

## GROUNDS FOR APPEAL

12 A. GROUND ONE

THE PROSECUTOR IMPROPERLY VOUCHED FOR THE CREDIBILITY OF A KEY PROSECUTION WITNESS.

SUPPORTING FACTS

The petitioner's right to a fair trial was violated by the prosecution's bolstering of the credibility, and vouching for, the testimony of co-defendant and chief government witness, Eddie Torres.

12 B. GROUND TWO

THE PETITIONER WAS ENTITLED TO A REQUIRED FINDING OF NOT GUILTY WHERE THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO WARRANT THE CONVICTIONS.

SUPPORTING FACTS

The state trial judge erred in denying the petitioner's motion for a required finding of not guilty. There was insufficient evidence of petitioner's liability as a joint venturer. The evidence of the petitioner's participation was insufficient as a matter of law because the evidence failed to show petitioner as a participant in a joint enterprise to commit an armed burglary (the predicate felony) to warrant a conviction of felony murder.

12 C. GROUND THREE

THE STATE SUPREME JUDICIAL COURT SHOULD HAVE EXERCISED ITS POWER UNDER MGL c. 278 § 33E IN ORDERING A NEW TRIAL OR REDUCING THE MURDER VERDICT TO MANSLAUGHTER.

12 C. (continuing)

SUPPORTING FACTS

The facts and circumstances of this case, the disproportionate verdicts and sentences meted out in the co-defendants cases, warranted a reduction of the verdict to manslaughter. Two theories of murder were presented to the jury, viz., premeditated murder and felony murder. The jury rejected premeditated murder, but convicted the petitioner of felony murder on a joint venture theory, with armed burglary as the predicate felony. All of the credible evidence, however, viewed in the light most favorable to the Commonwealth, pointed to a scenario where the petitioner stabbed the victim, in response to the victim's threatening behavior, outside the apartment. Even if there were sufficient evidence to warrant a conviction of joint venture felony murder under these circumstances (but see GROUND TWO), the causal connection between the defendant's alleged joint venture participation in the underlying felony, and the stabbing death of the victim, was weak.

older possession"); *Bon v. Graves,* 216 Mass. 440, 445, 103 N.E. 1023 (1914) ("Such title gives the plaintiff a standing in court"). Therefore, the judge also erred in granting summary judgment against the Cones.

*Conclusion.* In accordance with the reasoning set forth above, we hold that the plaintiffs may pursue their claims to fee title in the land within the railway because their property abuts a way or other similar linear monument within the meaning of § 58. We also hold that the Cones may pursue their separate claim to pursue an action to quiet title. Therefore, we vacate the entry of summary judgment and remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*




438 Mass. 808

COMMONWEALTH

v.

**Anthony ROLON.**

Supreme Judicial Court of Massachusetts, Bristol.

Argued Nov. 8, 2002.

Decided March 13, 2003.

Defendant was convicted in the Superior Court Department, Bristol County, Charles J. Hely, J., of felony murder in the first degree with armed burglary as the predicate felony, two accounts of assault and battery, armed assault in a dwelling, and home invasion. Following trial the Superior Court granted defendant's motion to reduce jury's verdict of murder in the first degree to murder in the second degree. Commonwealth and defendant appealed. The Supreme Judicial Court, Sosman, J., held that: (1) prosecutor did not improperly vouch for witness who had plea agreement; (2) prosecutor did not improperly use witness's promised guilty plea as evidence of defendant's guilt; (3) issue of whether defendant shared intent with perpetrators who entered apartment and by joint venture participated in armed burglary was for the jury; (4) victim's fatal stabbing occurred in connection with the predicate felony of armed burglary; (5) defendant was not guilty of assault and battery by means of a dangerous weapon; (6) defendant was not guilty of armed assault; and (7) trial court abused its discretion in reducing jury's verdict of murder in the first degree to murder in the second degree.

Affirmed in part, reversed in part, and vacated in part.

**1. Criminal Law ⟹720(5)**

In trial of defendant for felony murder, prosecutor did not improperly vouch for witness, who had a plea agreement and testified he saw defendant stab victim, by asking witness on direct whether witness agreed to provide "truthful" testimony, when defense counsel in his opening statement attacked witness's credibility by misstating the contents of the plea agreement; defense counsel claimed that if witness did not tell jury that defendant killed victim witness had no agreement, and, though better practice would have been for prosecutor to ask at a sidebar permission to do so, prosecutor was allowed to elicit on direct the actual contents of the agreement.

**2. Witnesses ⟹318**

Ordinarily, questions concerning a plea agreement's requirement that a cooperating witness give "truthful" testimony should be reserved for redirect examination after cross-examination has attacked the witness's credibility based on the agreement, though there is not an absolute prohibition that prevents any and all direct examination reference to the agreement's terms concerning "truthful" testimony.

**3. Criminal Law ⟹720(5)**

Though general references in an opening statement to a witness's bias or motive because of the mere existence of a plea agreement are not sufficient to avoid the requirement that questioning on the agreement's stated obligation of "truthful" testimony await redirect examination, references to purported contents of the agreement, particularly when those references include an erroneous characterization of the agreement's terms, are sufficient.

**4. Criminal Law ⟹720(5)**

In trial of defendant for felony murder, prosecutor did not improperly vouch for witness, who had a plea agreement and testified he saw defendant stab victim, by referencing fact that plea agreement was signed by witness's lawyer and mother, as questions arose for purposes of authenticating the agreement and refreshing witness's memory when he initially testified he did not recognize agreement, there was no objection to the evidence of the signatures, and the trial court was not required to strike the evidence sua sponte.

**5. Criminal Law ⟹720(5)**

Evidence of witness's plea agreement introduced in trial for felony murder during direct examination of witness, who testified he saw defendant stab victim, did not suggest to jury that prosecution had superior ability to ascertain whether witness was truthful, where references to witness's obligation to give truthful testimony were few, agreement was not admitted in evidence, prosecutor's opening statement and closing argument repeatedly disavowed any vouching for any witness, prosecutor's closing argument stressed that jury should "take a good, hard look" at any testimony given pursuant to a plea agreement, and trial court instructed jury to consider witness's testimony with "particular caution and care" due to potential "improper influence" of plea agreement and that Commonwealth had no way of knowing whether a witness's testimony was truthful.

**6. Criminal Law ⟹720(5)**

In trial of defendant for felony murder, prosecutor during closing argument did not improperly vouch for witness, who had a plea agreement and testified he saw defendant stab victim, by acknowledging that witness had lied about his own participation in storming of apartment that victim was in, when defendant's closing had pointed to witness's incredible minimization of his own role in the event; prosecutor's argument that victim was a horrible witness who should not be believed when other witnesses provided contrary evidence but should be believed with respect to those details that were supported by other evidence was a permissible approach to the problem of a witness who had been shown to be less than truthful.

**7. Criminal Law ⟹422(2)**

A codefendant's guilty plea is not admissible to prove the guilt of the defendant.

**8. Criminal Law ⟹422(2)**

In trial of defendant for felony murder, prosecutor during closing argument did not impermissibly point to promised guilty plea of witness, who had a plea agreement and testified he saw defendant

Case 1:04-cv-10532-GAO Document 2 Filed 03/12/2004 Page 10 of 12



[82]John F. Palmer, Boston, for the defendant.

Kevin Connelly, Assistant District Attorney (Steven E. Gagne, Assistant District Attorney, with him) for the Commonwealth.

Present: MARSHALL, C.J., GREANEY, SOSMAN, & CORDY, JJ.

SOSMAN, J.

The defendant was convicted of felony-murder in the first degree, with armed burglary as the predicate felony.[1] He was also convicted of two counts of assault and battery by means of a dangerous weapon, armed assault in a dwelling, home invasion, and armed burglary. The defendant filed a motion pursuant to Mass. R.Crim. P. 25(b)(2), 378 Mass. 896 (1979), seeking reduction of the murder verdict. The trial judge allowed the motion and reduced the verdict to murder in the second degree. The Commonwealth appeals from the judge's order reducing the verdict. The defendant appeals from his convictions[2] and asks this court to order a new trial or to further reduce the verdict to manslaughter pursuant to G.L. c. 278, § 33E. For the following reasons, we affirm the conviction of murder in the first degree, reverse the order reducing the degree of guilt, reverse the convictions of assault and battery by means of a dangerous weapon and armed assault in a dwelling, vacate [83]as duplicative the conviction of armed burglary, and decline to grant relief pursuant to G.L. c. 278, § 33E.

1. *Facts.* The defendant's convictions stem from an incident in which a group of armed men stormed an apartment in a New Bedford housing project in retaliation for an earlier confrontation involving some of the apartment's occupants. Three persons in the apartment—Robert Botelho, Matthew Grant, and Anthony Mullen—were stabbed in the course of the ensuing melee. Botelho died from his injuries. Grant and Mullen survived. The Commonwealth's theory was that Rolon was the principal instigator of the group's attack on the apartment and that he was the one who fatally stabbed Botelho during the course of that attack.

On the evening of January 20, 1996, Botelho, Mullen and Grant were visiting the apartment of Botelho's girl friend, Natasha Azevedo. Azevedo lived in the apartment with her two-year old son, her sister Tiffany, and her cousin, Desiree Gibbs. After some period of drinking, the three men and three women decided to go to a party being held at a nearby apartment in the housing project. There was some concern about potential friction between Botelho and other guests who might be at the party, and the three men therefore armed themselves: Mullen with a "steak fork," Grant with a hammer, and Botelho with a pistol. Botelho's pistol, although it appeared real, had a plug in the barrel and was incapable of firing. After leaving Azevedo's baby with a next door neighbor, the group proceeded to the party at around 11 P.M.

At the party, a fight erupted between Mullen and one of the other guests. During that altercation, Botelho pulled out his gun, waved it around, and told everyone to "get off [his] boy." The defendant, Anthony Rolon, arrived shortly before the end of the fight and began arguing with Botelho. Rolon complained that Botelho would "bring the cops around" where he, Rolon, was "trying to make money." During that argument, Botelho pulled his gun out, waved it around, and repeatedly pointed it at Rolon. In response, Rolon stretched out his arms and told Botelho to "come on, go ahead." Various friends intervened, convinced Botelho to put the gun away and leave, and escorted Botelho and his companions back to Azevedo's apartment to make [84]certain that they left. However, despite the efforts to separate Botelho from Rolon, Rolon and a few of his friends followed close behind. Rolon continued shouting at Botelho ("Come on, you're a big man, go ahead"). When they reached Azevedo's apartment, words continued to be exchanged, with Rolon yelling for Botelho to come out and fight. Botelho ultimately told them to leave, and went inside Azevedo's apartment. One of Rolon's friends yelled out, "We'll be back." Rolon's group then left, and all was quiet for some ten to twenty minutes thereafter.

During that interval of time, Rolon's group joined up with a larger group of some fifteen to twenty young men. Most of them were armed, carrying knives, bats, shovels, hammers, sticks, and frying pans. As they assembled slightly down the hill from Azevedo's apartment, someone asked what they were doing. An unidentified member of the group replied, "We're [going to] take care of something." Others were heard asking who had pulled a gun on Rolon. Rolon said that he "was going to get the kid" with the gun. Various people who had been at the earlier party saw the armed group and attempted to dissuade Rolon, telling him and his companions that they should "just drop it ... just leave it alone" that "the person's gone, he's left," and "[t]here's no more reason to fight." However, Rolon did not respond, and "nobody seemed to listen." Anticipating trouble, one partygoer went to telephone the police.

Rolon, at the head of one group, proceeded up the hill in the direction of Azevedo's apartment, while a smaller group broke off and approached the apartment by a different route. As they reached the apartment, one group went around to the back while the other remained in front. The attack began by smashing the apartment windows with a rock, a board, and a shovel. Botelho, Mullen, and Grant rushed out the back door. Botelho, carrying his inoperable gun, ran at one of his attackers and struck him with the gun. However, the gun fell to the ground, and someone called out that the gun was a "fake." Grant grabbed Botelho and rushed back toward the apartment. Rolon and one of his companions, Hidekel "Kelly" Hernandez, chased after Botelho and caught up with him just outside the back door. Hernandez began hitting Botelho; Rolon stabbed him several times. Botelho [85]went back inside the apartment, and ultimately collapsed in the living room.

Meanwhile, other members of Rolon's group were fighting with Mullen outside. Mullen was hit with a shovel and cut with a knife. When he made his way back inside the apartment, he was assaulted by yet another intruder with a knife. Others pushed their way through the back door and caught up with Grant, who had managed to get inside as far as the living room. Surrounded by attackers who had him pinned down on the couch, Grant was struck in the head with the handle of a hammer and stabbed in the buttocks and thigh, severing an artery. Versions differed as to the identity of the individuals who stabbed Mullen and Grant, and versions differed as to whether Rolon himself had ever been inside the apartment at any

1. The jury found the defendant not guilty on the alternative theory of deliberate premeditation.

2. The conviction of home invasion was placed on file with the defendant's consent, and is therefore not before us. See *Commonwealth v. Frey*, 390 Mass. 245, 246, 454 N.E.2d 478 (1983), citing *Commonwealth v. Delgado*, 367 Mass. 432, 438, 326 N.E.2d 716 (1975).

the questions now complained of arose for purposes of authenticating the agreement and refreshing Torres's memory when he initially testified that he did not even recognize the agreement.[5]

[6] Separate and apart from his arguments concerning the use of the plea agreement, the defendant moved for a mistrial on the ground that the prosecutor's closing argument contained impermissible vouching for Torres when the prosecutor acknowledged that Torres had "lied" about his own participation in the event.[6] A prosecutor does not, in any sense, "vouch" for a witness by conceding that the witness has "lied." However, the defendant contends that the prosecutor's labeling Torres a liar with respect to only a portion of his testimony implicitly vouched for the remainder of Torres's testimony. Following a defense closing that had pointed to Torres's incredible minimization of his own role in the event, we see no such implicit vouching in the prosecutor's acknowledgment that Torres was "a horrible witness" who should not be believed whenever other witnesses provided contrary evidence but who should be believed with respect to those details that were supported by other evidence. This is a permissible—indeed a common—approach to the problem of a witness who has been shown to be less than truthful on certain aspects of his or her testimony: admit the dishonesty or inaccuracy that has been demonstrated by more reliable evidence, and point to the existence of evidence that corroborates other portions of the witness's testimony that would make it reasonable to credit those other portions. It is not improper vouching for the prosecutor to point to reasons why a witness's testimony, or portions of a witness's testimony, should logically be believed. See *Commonwealth v. Chavis,* 415 Mass. 703, 713–714, 616 N.E.2d 423 (1993).

[7, 8] 3. *Torres's guilty plea.* Rolon contends that the prosecutor's closing argument impermissibly pointed to Torres's promised guilty plea as substantive evidence of Rolon's own guilt as a joint venturer. A codefendant's guilty plea is not admissible to prove the guilt of the defendant. See *Commonwealth v. Martinez,* 425 Mass. 382, 398–399, 681 N.E.2d 818 (1997); *Commonwealth v. Powell,* 40 Mass.App.Ct. 430, 436, 665 N.E.2d 99 (1996). However, contrary to the defendant's argument, that is not how Torres's proposed plea was used or argued. Rather, it was used and argued to address a separate issue that had been raised during the cross-examination of Torres. Defense counsel had pointed out that, while Torres claimed that he had not stabbed Botelho, he had nevertheless agreed to plead guilty to murder in the second degree in connection with Botelho's death. That ostensible discrepancy was then used repeatedly as an illustration of Torres's willingness to "lie" in order to obtain the benefits of his plea agreement. To put that discrepancy in context, the prosecutor's closing argument asked the jury to consider the concept of joint venture in connection with their assessment of "why it is that Eddie Torres is pleading guilty," and reminded them that Torres was represented by a lawyer at the time of his agreement.[7] This reference did not suggest to the jury that Torres's plea on a joint venture theory added weight to the Commonwealth's joint venture theory against Rolon. Rather, it was used to point out that Torres could be guilty of murder even though he had not stabbed Botelho, such that his guilty plea was not inconsistent with his assertion that he did not stab Botelho. There was no objection, and this brief reference to a theory that would harmonize Torres's plea with his denial of individual guilt does not give rise to any substantial likelihood of a miscarriage of justice.

[9] 4. *Motion for required findings of not guilty.* a. *Felony-murder.* The defendant contends that the judge erroneously denied his motion for required finding of not guilty on the charge of felony-murder, claiming that there was insufficient evidence that he had committed the predicate felony of armed burglary, as either a principal or a joint venturer.[8] Rolon acknowledges that there was evidence that he stabbed Botelho, but, where he attacked Botelho outside the apartment, without ever having entered the apartment, he argues that he did not himself commit any armed burglary.[9] Rolon's argument concerning insufficient evidence of his liability as a principal is easily disposed of, as felony-murder was ultimately submitted to the jury solely on a theory of joint venture.[10] As to the alternative theory of joint venture, he contends that the evidence was insufficient to prove that he shared any intent with the perpetrators who did enter the premises and commit the armed burglary. However, the evidence amply supported the inference that retaliation for Botelho's earlier assault on Rolon was the entire purpose of the ven-

5. We are also satisfied that the evidence of the plea agreement introduced during the direct examination of Torres did not violate the fundamental concern of *Commonwealth v. Ciampa,* 406 Mass. 257, 264, 547 N.E.2d 314 (1989), namely, that the jury not be led to believe that the prosecution has some superior ability to ascertain whether the witness's testimony is truthful. Here, the references to Torres's obligation to give truthful testimony were few and fleeting, not repeated or dwelt upon; the agreement itself was not even admitted in evidence; the prosecutor's opening statement and closing argument repeatedly and expressly disavowed any vouching for any of the witnesses; the prosecutor's closing argument stressed that the jury should "take a good, hard look" at any testimony given pursuant to a plea agreement because such an agreement can "completely color[ ]" that person's testimony; and the judge gave a thorough and forceful instruction in accordance with *Commonwealth v. Ciampa, supra* at 266, 547 N.E.2d 314, admonishing them to consider Torres's testimony with "particular caution and care" due to the potential "improper influence" of his plea agreement and telling them that the Commonwealth had no way of knowing whether a witness's testimony was truthful.

6. Torres denied that he had carried any weapon and denied that he had stabbed Grant, claiming that he had been pulled away by Tiffany Azevedo when he tried to "hit" Grant. However, eyewitnesses saw Torres on top of Grant on the couch and saw a knife in his hand, and that same hand was bloody.

7. At the reference to Torres's lawyer, the judge interrupted the closing argument and told the prosecutor to "move on."

8. The statute, G.L. c. 266, § 14, defines two forms of armed burglary. Both forms require proof that the defendant committed a breaking and entering of a dwelling at night, with intent to commit a felony, while a person is lawfully within the dwelling. The remaining element consists of either of the following: (1) that the defendant was armed with a dangerous weapon (or became armed after entering), or (2) that the defendant actually assaulted a person who was lawfully in the dwelling. G.L. c. 266, § 14. See *Commonwealth v. Gordon,* 42 Mass.App.Ct. 601, 603, 678 N.E.2d 1341 (1997).

9. Contrary to his argument, there was some evidence to support the inference that Rolon had entered the dwelling at some point during the incident. See note 3, *supra.*

10. The judge gave the jury oral and written instructions, both of which described only a joint venture theory for felony-murder; and the heading on the written instructions for felony-murder entitled that section "FIRST DEGREE FELONY MURDER: BY JOINT VENTURE PARTICIPATION IN AN ARMED BURGLARY WITH AN INTENT TO COMMIT AN ARMED BEATING ON A PERSON LAWFULLY INSIDE." At no point was the jury instructed to consider felony murder on anything other than a theory of joint venture.

[21-23] A judge's discretion to reduce a verdict pursuant to rule 25(b)(2) is appropriately exercised where the weight of the evidence in the case, although technically sufficient to support the jury's verdict, points to a lesser crime. Thus, for example, where evidence of premeditation was "slim," the judge did not abuse his discretion in reducing a verdict of murder in the first degree to murder in the second degree. See *Commonwealth v. Ghee*, 414 Mass. 313, 322, 607 N.E.2d 1005 (1993). See also *Commonwealth v. Millyan, supra* at 188–189, 503 N.E.2d 934 (verdict reduction appropriate where evidence of intoxication undermined theory of deliberate premeditation).[15] Similarly, where the weight of the evidence suggests that the defendant did not act with malice, a murder verdict may appropriately be reduced to manslaughter. See *Commonwealth v. Woodward, supra* at 669–671 & n. 14, 694 N.E.2d 1277; *Commonwealth v. Cobb*, 399 Mass. 191, 192, 503 N.E.2d 945 (1987); *Commonwealth v. Keough, supra* at 320–321, 431 N.E.2d 915; *Commonwealth v. Gaulden, supra* at 557–558, 420 N.E.2d 905; *Commonwealth v. Greaves*, 27 Mass. App.Ct. 590, 594, 541 N.E.2d 349 (1989).[16] In some cases, weaknesses in the evidence supporting₁₁₀₅ the jury's verdict were coupled with trial error that may have influenced the jury's assessment of the issue. See *Commonwealth v. Woodward, supra* at 671, 694 N.E.2d 1277 (although evidence suggested that defendant did not act with malice, jury not instructed on manslaughter); *Commonwealth v. Millyan, supra* at 188–189, 503 N.E.2d 934 (evidence of intoxication undermined theory of deliberate premeditation, but jury not instructed on issue of impairment due to intoxication). What is not justified, however, is reduction to a lesser verdict that would be inconsistent with the weight of the evidence, or reduction based solely on factors irrelevant to the level of offense proved. See *Commonwealth v. Sabetti*, 411 Mass. 770, 780–781, 585 N.E.2d 1385 (1992) (failure to prove that defendant knew weight of cocaine did not justify reduction of verdict of trafficking in cocaine to possession with intent to distribute, because defendant's knowledge of weight irrelevant to offense); *Commonwealth v. Burr*, 33 Mass.App.Ct. 637, 640–644, 604 N.E.2d 36 (1992) (error to reduce verdicts of trafficking in cocaine to possession with intent to distribute in absence of evidence that quantity of cocaine was below trafficking level).

15. Weakness in the evidence of deliberate premeditation has similarly prompted this court to exercise its authority under G.L. c. 278, § 33E, and reduce convictions of murder in the first degree to murder in the second degree. See *Commonwealth v. Lunone*, 392 Mass. 583, 591–592, 467 N.E.2d 159 (1984); *Commonwealth v. Dalton*, 385 Mass. 190, 196–197, 431 N.E.2d 203 (1982); *Commonwealth v. King*, 374 Mass. 501, 507–508, 373 N.E.2d 208 (1978); *Commonwealth v. Cadwell*, 374 Mass. 308, 316–318, 372 N.E.2d 246 (1978).

16. Where the weight of the evidence suggested that a defendant did not act with malice, this court has reduced murder verdicts to manslaughter under G.L. c. 278, § 33E. See *Commonwealth v. Seit*, 373 Mass. 83, 95, 364 N.E.2d 1243 (1977) (weight of evidence was that killing occurred as result of excessive force in self-defense or on provocation and was therefore not murder); *Commonwealth v. Mahnke*, 368 Mass. 662, 701–702, 335 N.E.2d 660 (1975), cert. denied, 425 U.S. 959, 96 S.Ct. 1740, 48 L.Ed.2d 204 (1976) (where death caused by victim's head hitting curb after single blow from defendant, evidence was weak with respect to any prong of malice); *Commonwealth v. Kinney*, 361 Mass. 709, 711–713, 282 N.E.2d 409 (1972) (defendant under attack by crowd at time he fired weapon); *Commonwealth v. Ransom*, 358 Mass. 580, 583, 266 N.E.2d 304 (1971) (evidence was that killing occurred during "heat of a sudden affray"); *Commonwealth v. Baker*, 346 Mass. 107, 119, 190 N.E.2d 555 (1963) (same).



We look, therefore, to determine whether there was some weakness in the evidence that Rolon committed felony-murder in the first degree, or evidence suggesting that he more likely committed some lesser form of homicide. If, as we conclude, the weight of the evidence is entirely consistent with felony-murder in the first degree, it is an abuse of discretion to reduce the verdict solely on factors unrelated to the weight of the evidence.

Here, the judge provided a written memorandum outlining his reasons for reducing the verdict to murder in the second degree. See *Commonwealth v. Gaulden, supra* at 556, 420 N.E.2d 905 (judge should state reasons for reducing verdict). Those reasons were that Botelho had pointed a gun at Rolon earlier in the evening (such that the purpose of the armed burglary was "violent retaliation"), with Rolon only becoming aware of the fact that the gun was inoperable sometime after the attack on the apartment was underway; that Rolon stabbed Botelho outside the house "before the intruders entered" and never went inside the house himself; and that Rolon was only eighteen years of age at the time of the murder. These stated reasons do not provide an adequate basis for reducing the verdict to murder in the second degree.

₁₁₀₃By his reference to Botelho's being the initial aggressor with a weapon earlier that night, the judge was invoking a theory of provocation as a means of reducing the degree of felony-murder. While provocation resulting in a heat of passion would operate to negate malice, it is not germane to felony-murder, where malice need not be shown. For felony-murder, the intent to commit the predicate felony substitutes for malice. See *Commonwealth v. Moran*, 387 Mass. 644, 649, 442 N.E.2d 399 (1982), and cases cited. Evidence of provocation would not in any sense detract from evidence that the defendant committed the predicate felony and is not a proper basis on which to reduce a conviction of felony-murder.[17]

17. Moreover, even if provocation were relevant to a charge of felony-murder, the weight of the evidence does not suggest that there was adequate provocation. While the earlier confrontation with Botelho, which included Botelho's pointing a gun at Rolon, would ordinarily constitute adequate provocation, Rolon was apparently unafraid of Botelho's weapon—he taunted Botelho to shoot, followed him up the hill with further taunts, and sought (unsuccessfully) to lure this ostensibly armed man out to fight. This evidence does not suggest fright, panic, or sudden impulsive conduct on Rolon's part. Rolon's reason for being upset at the earlier fight and at Botelho's pulling a gun during that fight—namely, that it would bring police to the scene and interfere with Rolon's ability to "make money"—would obviously not constitute adequate provocation. Then, the confrontation between Rolon and Botelho (which Rolon had sought to prolong, not to end) broke off when Botelho refused to come out and fight. Rolon withdrew for the purpose of joining up with a large number of armed young men, vastly outnumbering his intended victims, and deliberately ignored those who sought to convince him that Botelho's departure from the scene should end the matter without further violence. Rolon's "violent retaliation" occurred only after a lengthy opportunity—and after repeated advice—to "cool down." See *Commonwealth v. Andrade*, 422 Mass. 236, 237, 661 N.E.2d 1308 (1996), quoting *Commonwealth v. Schnopps*, 383 Mass. 178, 180, 417 N.E.2d 1213 (1981), S. C., 390 Mass. 722, 459 N.E.2d 98 (1984) (killing must follow provocation "before sufficient time had elapsed for the accused's temper to cool"); *Commonwealth v. McLeod*, 394 Mass. 727, 738, 477 N.E.2d 972, cert. denied sub nom. *Aiello v. Massachusetts*, 474 U.S. 919, 106 S.Ct. 248, 88 L.Ed.2d 256 (1985) (provocation evidence must show that reasonable person "would not have 'cooled off' by the time of the homicide"). In similar situations, where a defendant has left the scene of an earlier confrontation only to return later with a weapon in order to exact vengeance, we have repeatedly declined to grant relief under G.L. c. 278,