UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Anthony Rolon, Petitioner

-v-

Luis Spencer, Respondent            No. 04-CV-10532-GAO

PETITIONER'S BRIEF ON THE MERITS
AS TO WHY THE WRIT SHOULD ISSUE

## Statement Of The Case

The petitioner, Anthony Rolon, (petitioner) was
convicted in the Superior Court, Hely, J., of Felony-
Murder in the First Degree, with ARmed Burglary as the
predicate felony, two charges of Assault & Battery,
Armed Assault In A Dwelling, and Home Invasion.

Following the petitioner's trial, where the jury
returned verdicts of guilty to all charges listed above,
including an "alternative verdict" of guilty of the
murder indictment of Second Degree Murder, the Superior
Court, Hely, J., granted the defendant's motion to reduce
the jury 's verdict of murder in the First Degree to
Murder In The Second Degree.

The petitioner and the Commonwealth appealed.  The
Supreme Judicial Court, Sosman, J., held that:

Rolon v. Spencer,              Brief-Hab.                -2-


1) The prosecutor did not improperly vouch for a
   witness who had a plea agreement;

2) The prosecutor did not improperly use witness's
   promised guilty plea as evidence of petitioner's
   guilt;

3) Issue of whether petitioner shared intent with
   perpetrators who entered apartment and by joint
   venture participated in armed burglary was for
   the jury;

4) Victim's fatal stabbing occurred in connection with
   the predicate felony of armed burglary;

5) Petitioner was not guilty of Assault & Battery by
   means of a dangerous weapon;

6) Petitioner was not guilty of Armed Assault;

7) Trial Court abused its discretion in reducing jury's
   verdict of murder in the first degree to murder in
   the second degree.

   **Commonwealth v. Rolon**, 438 Mass. 808 (2003)


   The Supreme Judicial Court affirmed the petitioner's

conviction on March 13, 2003.  On March 12, 2004, the

petitioner filed a 3-count petition for a writ of habeas

corpus under 28 USC §2254.  Based on the fact that the

petitioner was a juvenile at the time of the crime and

was not allowed a Transfer Hearing [G.L. c. 119 §61]

the petitioner, in the process of preparing a Motion For

New Trial under M.R.Crim.P. 30(A)(b)(c), requested a

Stay Of Proceedings from Judge O'Toole.

Rolon v. Spencer,                Brief-Hab.                    -3-


Judge O'Toole denied the motion on 8/24/05 and
referred the case to Magistrate Judge Sorokin, who then
ordered the petitioner to file his brief on the merits
by October 11, 2005.

The petitioner, appearing Pro Se, was unable to file
such a brief and instead filed a renewed motion to Stay,
or in the alternative, for "dismissal without prejudice"
so he could return to Federal Court after he had exhausted
the Juvenile question [amongst others] in the State
Court.[Affidavit In Support...September 14, 2005]

On November 1, 2005, the Magistrate Judge, Sorokin,
ordered the petitioner to "file his brief on the merits
by December 1, 2005."

### Statement Of The Facts

According to the Commonwealth's version [**Commonwealth
v. Latimore**, 378 Mass. 671 (1979)], the petitioner's
convictions stem from an incident in which a group of
armed men stormed an apartment in a New Bedford housing
project, in retaliation for an earlier confrontation
with some of the apartment's occupants. Three persons

Rolon v. Spencer,                Brief-Hab.                    -4-


in the apartment, Robert Botelho, Matthew Grant, and

Anthony Mullen, were stabbed in the course of the ensuing

melee.

Botelho died from his injuries.  Grant and Mullen

survived.  The Commonwealth's theory was that the

petitioner was the principal instigator of the group's

attack of the apartment and that he was the one who fatally

stabbed Botelho during the course of that attack.

On the evening of January 20, 1996, Botelho, Mullen,

and Grant were visiting the apartment of Botelho's

girlfriend, Natasha Azevedo. Azevedo lived in the apartment

with her two-year-old son, her sister, Tiffany, and her

cousin, Desiree Gibbs.

After some period of drinking, the three men and

three women decided to go to a party being held at a

nearby apartment in the housing project.

There was some concern about potential friction between

Botelho and other guests who might be at the party, and

the three men, therefore, armed themselves; Mullen with

a "steak fork," Grant with a hammer, and Botelho with

Rolon v. Spencer,            Brief-Hab.                -5-

a pistol.  Botelho's pistol, although it appeared real, had a plug in the barrel and was incapable of firing.

    After leaving Azevedo's baby with a next-door neighbor, the group proceeded to the party at around 11:00 p.m.

    At the party, a fight erupted between Mullen and one of the other guests.  During that altercation, Botelho pulled out his gun, waived it around, and told everyone to "get off [his] boy."  The petitioner, Anthony Rolon, arrived shortly before the end of the fight and began arguing with Botelho.

    Rolon complained that Botelho would "bring the cops around" where he, Rolon, was "trying to make money." During that argument, Botelho pulled his gun out, waved it around and repeatedly pointed it at Rolon.  In response, Rolon stretched out his arms and told Botelho to "come on, go ahead."  Various friends intervened, convinced Botelho to put the gun away and leave, and escorted him and his companions back to Azevedo's apartment to make certain that they left.

    However, despite the efforts to separte Botelho from Rolon, Rolon and a few of his friends followed close

Rolon v. Spencer,            Brief-Hab.            -6-

behind.   Rolon continued shouting at Botelho ("Come on,
you're a big man, go ahead.")  When they reached Azevedo's
apartment, words continued to be exchanged, with Rolon
yelling for Botelho to come out and fight.  Botelho ultimately
told them to leave, and went inside Azevedo's apartment.
One of Rolon's friends yelled out, "We'll be back."

Rolon's group then left, and all was quiet for some
ten to twenty minutes thereafter.

During that interval of time, Rolon's group joined up
with a larger group of some fifteen to twenty young men.
Most of them were armed, carrying knives, bats, shovels,
hammers, sticks, and frying pans.  As they assembled slightly
down the hill from Azevedo's apartment, someone asked what
they were doing?  An unidentified member of the group
replied: "We're going to take care of something."

Others were heard asking who had pulled a gun on Rolon?
Rolon said that "he was going to get the kid" with the gun.
Various people who had been at the earlier party saw the
armed group and attempted to dissuade Rolon, telling him
and his companions that they should "just drop it... just
leave it alone," "The person's gone, he's left." and

Rolon v. Spencer,          Brief-Hab.              -7-

"[T[here's no more reason to fight."

However, Rolon did not respond and "nobody seemed to listen." Anticipating trouble, one partygoer went to telephone the police.

Rolon, at the head of one group, proceeded up the hill in the direction of Azevedo's apartment, while a similar group broke off and approached the apartment by a different route.  As they reached the apartment, one group went around to the back while the other remained in front.

The attack began by smashing the apartment windows with a rock, a board, and a shovel.  Botelho, Mullen, and Grant rushed out the back door.  Botelho, carrying his inoperable gun, ran at one of his attackers and struck him with the gun.  However, the gun fell to the ground and someone called out that the gun was a "fake." Grant grabbed Botelho and rushed back toward the apartment. Rolon and one of his companions, Hidekel "Kelly" Hernandez, chased after Botelho and caught up with him just outside the back door.  Hernandez began hitting Botelho; Rolon stabbed him several times.  Botelho went back inside the

Rolon v. Spencer,                Brief-Hab.                    -8-

apartment and ultimately collapsed in the living room.

Meanwhile, other members of Rolon's group were
fighting with Mullen outside.  Mullen was hit with a
shovel and cut with a knife.  When he made his way back
inside the apartment, he was assaulted by yet another
intruder, and others pushed their way through the back
door and caught up with Grant, who had managed to get
inside as far as the living room.  Surrounded by
attackers who had him pinned down on the couch, Grant was
struck in the head with the handle of a hammer and stabbed
in the buttocks and thigh, severing an artery.  Versions
differed as to the identity of the individuals who
stabbed Mullen and Grant, and versions differed as to
whether Rolon himself had ever been inside the apartment
at any point.

By all accounts, the scene was chaotic, and most of
the perpetrators were never identified.

The attack ended when one of the instruders yelled
out "five-o," (A reference to the imminent arrival of the
police) and the group fled.  Rolon and several others
regrouped at a friend's apartment shortly thereafter.

Case 1:04-cv-10532-GAO    Document 20    Filed 11/30/2005    Page 9 of 17

Rolon v. Spencer,              Brief-Hab.                -9-


Hernandez, whose hands were bloody, reported that he

had gotten "the kid inside the house good," and Rolon

bragged that "he got that kid good with the gun."

Botelho was still alive when police arrived at the

scene, but he succumbed shortly thereafter.  He had three

deep stab wounds in the chest, the fatal wound being to

the haart.  He had also sustained blunt force injuries

and lacerations to the head, neck shoulders, back arm,

thigh and hands.


### Legal Arguments


WHERE THE PETITIONER'S DIRECT APPEAL
FAILED TO INCLUDE ANY FEDERAL CLAIMS
DIRECTLY TO THE STATE COURT, NONE OF
PETITIONER'S CLAIMS HAVE BEEN EXHAUSTED


A reasonable man would conclude by the fact that

the petitioner only filed his Petition For A Writ Of

Habeas Corpus under 28 USC §2254 on the last day allowed

by the statute of limitations, what the prisoners here

commonly call a "placeholder."

The issues presented by the Pro Se petitioner were

the following:

Rolon v. Spencer,                Memo-MNT                    -10-


1)    The defendant should be granted a new trial,
      where the prosecutor improperly vouched for
      the credibility of a key prosecution witness.

2)    The defendant was entitled to a required finding
      of not guilty, where there was insufficient
      evidence as a matter of law to warrant convictions.

3)    The Supreme Judicial Court should exercise its power
      under G.L. c. 278 §33E, to order a new trial or
      reduce the murder verdict to manslaughter.


     Two of the three issues are based on State statutes

and/or court rules.  M.R.Crim.P. 25(a) allows a Court

to dismiss the case, or, in the alternative, reduce a

jury's verdict under 25(b)(2), to a lesser verdict.

G.L. c. 278 §33E is Massachusetts' highest Court's enabling

statute to review capital cases.  There was no Federal

Laws raised in these arguments, except a passing reference

to **Jackson v. Virginia**, 443 US 307, 318-319 (1979)  The

attorney did not explain to the State Court <u>how</u> any Federal

Law was violated.  Indeed, he quoted State Law, using

**Commonwealth v. Latimore**, 378 Mass. 671 (1979)  The one

issue which may be based on Federal Law, was not briefed

to the SJC using any Federal Law.

     The defendant has been deprived of the opportunities

provided by Federal Law to have the issues reviewed by

Rolon v. Spencer,                Memo-MNT                    -11-


the Courts of the United States.


          The Supreme Court has long maintained
     'that as a matter of comity, federal courts
     should not consider a claim in a habeas
     corpus petition until after the state courts
     have had an opportunity to act.' **Rose v. Lundy**,
     455 US 509, 515 (1982) (discussing **Ex parte**
     **Royall**, 117 US 241, 251 (1886). Federal Courts
     have interpreted this imperative as requiring
     a habeas petitioner to 'have presented both the
     factual and legal underpinnings of his claim
     to the state courts in order for us to find it
     exhausted.' **Nadworny v. Fair**, 872 F.2d 1093,
     1096 (CA 1 1989). Moreover, Federal Courts
     have made no bones about the fact that a failure
     to exhaust ordinarily is 'fatal' to the prosecu-
     tion of a habeas petition.

     **Martens v. Shannon**, 836 F.2d 715, 717 (CA 1 1988)

     Accord: **Jackson v. Coalter**, 337 F.3d 74, 85 (CA 1
              (2003)


     The petitioner does not raise this as an _issue_, as

it, too, is unexhausted.  It is presented to this Honorable

Court by way of explanation as to why the petition should

be dismissed without prejudice, or, in the alternative,

stayed in abeyance until the petitioner exhausts _all_ the

issues in the State courts, including filing a Motion

For A New Trial on the issues presented by the direct

appeal attorney and the ones he delineated in his Renewed

Motion To Stay. [Affidavit In Support, pp. 1-2]

Rolon v. Spencer,              Memo-MNT                    -12-


Here, the petitioner has a similar situation as the
petitioner in **Kilburn v. Maloney**, 164 F.Supp 2d 113,
Affirmed, 164 F.Supp 2d 117 (D. Mass. 2001) Motion to
Stay allowed by the Magistrate Judge, (status report
required every 90 days and petitioner _must_ return to
Federal Court within 30 days of the State Court proceeding
having been exhausted.) [citing] **Duncan v. Walker**, 533 US
167 (2001)

As stated above, similar to **Kilburn**, unless a stay
is granted, or, in the alternative, the petition dismissed
_without_ _prejudice_, the petitioner will lose his right to
Federal review. **Id.**, 117, 119.

ISSUE#2: THE PETITIONER, THROUGH NO
FAULT OF HIS OWN, HAS DEFAULTED
ANY FEDERAL CLAIMS EXCEPT FOR THE
CAUSE AND PREJUDICE OF THE INEFFECTIVENESS
OF APPELLATE COUNSEL WHO DENIED PETITIONER
ACCESS TO THE FEDERAL COURTS BY FAILING TO
CLAIM VIOLATIONS OF FEDERAL LAW ON DIRECT APPEAL

The petitioner, appearing Pro Se, knows nothing about
the law, Habeas Corpus Petitions, or how to prepare a
brief for the Court.  He must rely upon inmate clerks
who are directed to provide access to research materials
only.

Rolon v. Spencer,            Memo-MNT                    -13-

Be that as it may, the petitioner has a right to
his direct appeal being effective and meaningful to
both the State and Federal Courts. **Evitts v. Lucey**,
469 US 387 (1985)  And, unfortunately, in the absence
of a constitutional violation the petitioner bears the
risk for all attorney errors. **Murray v. Carrier**, 477 US
478, 488 (1986)

Here, **Coleman v. Thompson**, 501 US 722 (1991) stands
for the principle that a Federal Court will not review
a question of federal law decided by a state court if
the decision of that Court rests on a state law ground
that is independent of the federal question(s) and
adequate to support the judgment.

When a federal district court reviews a state
prisoner's habeas corpus petition, pursuant to 28 USC
§2254, it must decide whether the petitioner is "in
custody in violation of the Constitution or laws or
Treaties of the United States." **Id.** 730

The Court has held that a state prisoner's federal
habeas petition should be dismissed if the prisoner has
not exhausted available state remedies as to any of

Rolon v. Spencer,              Memo-MNT                    -14-

his _federal_ claims, **Id.**, 731.

Where the appellate attorney failed to include any
_federal claims_ in petitioner's direct appeal, _none_ of
petitioner's claims have been exhausted, or only rely
on State Law.  They all have to be brought back to the State.

Where a §2254 petition pleads multiple federal claims,
the federal character of which has not fairly been presented
to the State Court, the District Court _must_ dismiss the
entire petition, including any exhausted claims. **Tart v.**
**Commonwealth**, 949 F.2d 490 (CA 1 Mass. 1991) (@ 494) [citing]
**Rose v. Lundy**, 455 US 509, 513-521 (1982)

If the District Court is unsure whether a [federal]
claim would be rejected by State Courts, federal habeas
proceedings should be dismissed _without prejudice_ or
stayed while the claim is presented to those Courts.
**Sloan v. Delo**, 54 F.3d 1371 (CA 8 MO 1995)

At bar, there _is_ Constitutional error, however, and the
petitioner should not be denied access to the Federal Court.
He may, at some point, have merits to bring in a §2254
petition, but first, in the correct manner, he must bring
his issues to the State.

Rolon v. Spencer,              Memo-MNT                    -15-

Mr. John Palmer, a state-appointed attorney left
the petitioner high-and-dry in regards to any federal
claim(s).  Mr. Palmer, an experienced attorney, knew he
could not be appointed counsel to proceed in Federal Court,
so, in sum, he abandoned his client in the defendant's
access to the United States Court.  The defendant should
not be penalized for this.

ISSUE #3: THE PETITIONER SHOULD HAVE<br>
HIS PETITION STAYED, OR, IN THE ALTERNATIVE,<br>
DISMISSED WITHOUT PREJUDICE TO RETURN AFTER<br>
REVIEW BY THE STATE COURTS IF THEY DO NOT APPLY<br>
FEDERAL LAW IN A REASONABLE MANNER

Magistrate Judge Sorokin put the petitioner between a
rock and a hard place.  The Judge's Memorandum And Order
of November 1, 2005 denied the petitioner's Motion For Stay
and Abeyance, and stated that "dismissal, even without
prejudice would appear to render a future habeas petition...
untimely." [Petitioner was within one day of the statute
of limitations under AEDPA for filing his petition.]

The prejudicial opinion by the Court, Sorokin, J.,
is not supported by the US Supreme Court, O'Connor, J.,
which held a District Court has discretion to stay a
petition to allow a petitioner to present his unexhausted

Rolon v. Spencer,              Memo-MNT                -16-

claims to the State Court in the first instance and
then to return to Federal Court for review of his [now]
perfected petition. **Rhines v. Weber**, --US-- 125 S.Ct.
1528 (2005)

On the other hand, dismissal without prejudice under
**Rose v. Lundy**, supra, was a prior option, pre-AEDPA, which
would protect a prisoner from forever losing the right to
Federal review.  **Rhines**, 1534.

**Rhines** has opened the petitioner's legal eyes to the
vagaries and nuances of forging ahead in a responsible
manner in the quest for the Great Writ.

The merits of any Federal violations **must** first be
presented to the State Courts to resolve Federal Law.
If those Courts do so in an unreasonable application, the
petitioner would be justified in returning to the District
Court.  **Williams v. Taylor**, 529 US 362 (2000)

It is debatable whether petitioner's petition is
mixed.  Secondly, pursuant to Magistrate Sorokin's ruling,
petitioner could not amend his petition because the
petition would then **become** mixed.

Rolon v. Spencer,              Memo-MNT                -17-

Thirdly, petitioner has good cause - he was saddled with an attorney who failed to raise all the issues, or to "federalize" the ones he did raise.  Petitioner was unable to obtain counsel to help him prior to the one-year statute of limitation under AEDPA, hence the last-minute filing of the petition.

Lastly, Attorney Palmer has "trapped the unwary pro se prisoner," **Rose v. Lundy**, supra, 520; **Slack v. McDaniel**, 529 US 473, 487 (2000) and the petitioner should get relief from the District Court, pursuant to **Rhines**, supra, and a stay and abeyance (with status schedule) crafted by this Honorable Court.

## Conclusion

For all of the reasons stated above, in fact and law, the petitioner should be allowed to return to State Court and exhaust all his federal issues.

November 29, 2005                    Respectfully submitted,

                                     Anthony Rolon, Pro Se
                                     Box 43, Norfolk, MA 02056

Certificate of Service:
I, Anthony Rolon, hereby certify that I mailed a true copy of the above brief to Tom Reilly, Attorney General, One Ashburton Place, Boston, MA 02108, by first class mail on November 29, 2005.

                                     Anthony Rolon, Pro Se